```
                                                          FILED
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS           MAY 23, 2006
                    EASTERN DIVISION                      MAY 23 2006

                                                      JUDGE HARRY D. LEINENWEBER
                                                       U.S. DISTRICT COURT JUDGE
```

GARDEN CITY BOXING CLUB, INC.,
a California Corporation,

                Plaintiffs,          Case No. 04 C 0351

        v.                         Hon. Harry D. Leinenweber

LUIS DOMINGUEZ, Individually
and d/b/a ANTENAS ENTERPRISES,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Garden City Boxing Club, Inc. (hereinafter, the "GCB") held exclusive licensing rights for the live broadcast of a boxing match. Defendant Luis Dominguez (hereinafter, "Dominguez") owned Antenas Enterprises, the installer of a satellite account at Mundelein Burrito restaurant. Antenas Enterprises listed Mundelein Burrito as a residence instead of a commercial location. As a result, Mundelein Burrito broadcast the boxing match without proper authorization.

Before the Court is GCB's Motion for Summary Judgment. GCB also moves to strike Dominguez's Response to its Summary Judgment Motion. Dominguez filed his response forty-nine days past the due date and failed to comply with Local Rule 56.1. The arguments contained in Dominguez's response do not change the outcome in this case. Thus, GCB's Motion to Strike **is denied** as moot. For the reasons stated herein, GCB's Motion for Summary Judgment **is granted**.

## I. BACKGROUND

The following facts are taken from GCB's Local Rule 56.1 submission. Because Dominguez failed to file his own Rule 56.1 submission, the facts are undisputed.

GCB is a corporation organized under the laws of California, with its principal office and business located in San Jose, California. Antenas Enterprises is an Illinois business located at 1239 West Madison, Chicago, Illinois. Dominguez is the sole owner and operator of Antenas Enterprises.

GCB entered into an exclusive closed-circuit television license agreement to distribute and exhibit the telecast of the September 14, 2002 professional prizefight between Oscar De La Hoya and Fernando Vargas ("the Event") at closed-circuit locations. Pursuant to the agreement, GCB marketed and distributed its closed- circuit rights to the Event to commercial establishments. Throughout Illinois, GCB contracted with various commercial establishments, such as bars, theaters, and restaurants to broadcast the Event in exchange for a fee. A commercial establishment could only show the Event if it was contractually authorized by GCB to do so and paid the appropriate fee. The fee paid to GCB by a commercial establishment for the Event was $20.00 times the maximum fire code occupancy of the establishment.

Antenas Enterprises is authorized to sell and install satellite systems under a contract with DISH Network. After installing systems, Antenas Enterprises transmits the satellite receiver

information, including the address and account name, to DISH Network for further processing. On January 17, 2002, through its employee Luis Garcia (hereinafter, "Garcia"), Antenas Enterprises incorrectly identified the customer account at 220 Hawthorn Commons, Vernon Hills, Illinois 60061 as "Jose Melendez," a residential designation. Despite its residential designation, the location is actually a restaurant, Mundelein Burrito (formerly, El Famous Burrito). *See* Plaintiff Exhibit B. Mundelein Burrito is located in a commercial strip mall. *Id.* The signs and structure of the building clearly indicate it is a restaurant. *Id.*

On September 14, 2002, Mundelein Burrito showed the Event to its patrons. However, because Mundelein Burrito was classified as a residence, it did not pay the proper fee for a commercial establishment (calculated at $20 times the maximum fire code occupancy). Mundelein Burrito's maximum fire code occupancy is 46 persons. The satellite records show that Mundelein Burrito broadcast three additional boxing events for which GCB had exclusive rights. Affidavit of Marcus Corwin, ¶ 12. The sublicense fee for each event was $20.00 times the maximum fire code occupancy. Because of its designation, Mundelein Burrito paid residential rates to broadcast all four of the fights.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

### B. Liability Under Section 605(a)

Section 605(a) of the Cable Communications Act ("the Act") provides:

> [N]o person receiving [or] assisting in receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). The Act prohibits commercial establishments from intercepting and broadcasting to its patrons unauthorized satellite cable programming. *That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995 (D. Md. 1993).

### 1. *Respondeat Superior*

GCB argues that Antenas Enterprises is liable for Luis Garcia's actions under the doctrine of *respondeat superior*. Dominguez asserts that Garcia was an independent contractor and therefore, Antenas Enterprises cannot be vicariously liable for his actions.

Under the doctrine of *respondeat superior*, an employer is liable for injuries to third persons resulting from acts by an employee which, although not directly authorized or ratified by the employer, are incidental to the class of acts which the employee is hired to perform, and which are within the scope of his employment. Where these conditions exist, the law imputes to the employer the acts of the employee. *See Scottsdale Insurance Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621-22 (7th Cir. 2002). An employee is acting within the scope of his employment when he acts, at least in part, to further the interest of his employer. *Id.* at 722 (citations omitted). If Antenas Enterprises had the right to control the manner and method in which Garcia performed his work, than an agency relationship existed and Antenas Enterprises can be held liable under *respondeat superior*. *Hinkle Engineering, Inc. v. 175 Jackson L.L.C.*, No. 01 C 5078, 2002 WL 31248492, at *5 (N.D. Ill. Oct. 3, 2002).

Antenas Enterprises was hired to install a satellite system, complete a work order, and transmit the appropriate information to DISH Network. Garcia entered Mundelein Burrito as a representative of Antenas Enterprises in order to complete these tasks. His work

order was given to him by Antenas Enterprises. The sales order form that Garcia completed and signed as "installer" was an Antenas Enterprises form. Antenas Enterprises provided the forms and tasks to be completed by Garcia. It controlled the manner and method in which Garcia completed his work.

In a late-filed affidavit, Garcia now claims that he worked for Antenas Enterprises as an independent contractor, not an employee. Neither Antenas Enterprises nor Garcia submits any evidence to refute the above-mentioned evidence suggesting Garcia was an employee of Antenas Enterprises. Because Dominguez makes this claim only in the form of an unsubstantiated conclusion, it is not sufficient to defeat summary judgment. *Morris v. O'Boyle*, 168 Fed. Appx. 118, 119 (7th Cir. 2006).

Despite the fact that it was clearly a commercial establishment, Garcia did not correct the work order. Installing the satellite and completing the work order were within the scope of Garcia's employment. Thus, under the doctrine of *respondeat superior*, his actions are imputed to Antenas Enterprises.

### 2. *Antenas Enterprises Violated Section 605(a)*

GCB contends that Antenas Enterprises violated Section 605(a) by listing Mundelein Burrito as "Jose Melendez" when it forwarded the complete work order to DISH Network for processing. According to GCB, Antenas Enterprises knew the location was a restaurant, but listed it as a residence. In support of its argument, GCB attaches photographs of the restaurant located at the end of a commercial

strip mall. GCB argues that the signage, structure and location of Mundelein Burrito made it impossible to confuse with a residence.

GCB cites *National Satellite Sports, Inc. v. Eliadis, Inc. d.b.a. Melody Lane Lounge*, 253 F.3d 900 (6th Cir. 2001). In *Elidadis*, the Sixth Circuit affirmed the district court's grant of summary judgment on similar facts. *Id.* at 918. National Satellite Sports, Inc. ("NSS") was the exclusive distributor of a prizefight to commercial establishments in Ohio. *Id.* at 904. Time Warner Entertainment Company ("Time Warner") improperly listed a commercial establishment as a residence, thereby allowing access to the fight without payment to NSS. *Id.* The Sixth Circuit affirmed the district court's grant of summary judgment stating that an intermediary of a communication violates § 605(a) when "it divulges that communication through an electronic channel to one 'other than the addressee' intended by the sender." *Id.* at 916. Because Time Warner was not authorized to transmit the event to commercial establishments, it was liable for the incorrect listing. *Id.*

GCB also cites *That's Entertainment, Inc. v. J.P.T., Inc. v. J.P.T., Inc.*, 843 F. Supp. 995 (D. Md. 1993). In *That's Entertainment*, the district court faced a similar fact pattern to the one in this case. The plaintiff, That's Entertainment, Inc. ("TEI"), owned the exclusive closed-circuit television licensing rights to a professional heavyweight boxing match. *Id.* at 997. Defendant James Thomas, the owner of a commercial establishment, ordered the fight

through a residential account and broadcast it to patrons of the establishment. *Id.* at 997-98. The court found defendant violated the Act because he allowed the broadcast to be available to a commercial establishment without proper authorization. *Id.* at 999.

Section 605(a) states "[a]n authorized intermediary of a communication violates the Act when it divulges communication through an electronic channel to one other than the addressee." Mundelein Burrito was clearly a commercial establishment. The structure of the building, an exterior identification sign, and its location in a strip mall made this obvious. Mundelein Burrito paid only the residential fee for the four fights it broadcast to its patrons. It was not an authorized addressee of any of the four fights. By improperly listing Mundelein Burrito as a residence, Antenas Enterprises allowed the unauthorized broadcast of the Event, and three additional fights, to Mundelein Burrito. *See National Satellite Sports, Inc.*, 253 F.3d at 916. Like the defendants in *National Satellite Sports* and *That's Entertainment,* Antenas Enterprises is liable under § 605 of the Act.

### B. Damages

The unauthorized broadcast of the four separate events deprived GCB of the full value of its business investment. Section 605 entitles a successful litigant to elect between either actual damages plus the defendant's profits or statutory damages. 47 U.S.C. § 605(e). Where an aggrieved party elects to recover statutory damages, it may recover an award of damages "for each violation of

subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(ii). If the violation was willful and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount not more than $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). The court must award attorneys' fees to the prevailing party. 47 U.S.C. § 605(e)(3)(B).

GCB argues that the Antenas Enterprises failure to properly list Mundelein Burrito resulted in four separate violations. According to the license fee charged for each of the four fights that were illegally broadcast by Mundelein Burrito, the proper amount would have been $20.00 times the maximum fire code occupancy (46) or $3,680.00. Instead, due to the improper identification of the account as residential, Mundelein Burrito paid only $184.40 to broadcast the four events. GCB did not receive any of the $184.40. GCB argues that in order to achieve deterrence in theft of cable services, a multiplier of five (5) to seven (7) times actual damages is appropriate.

The Court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima. *Cable/Home Communication Corp. v. Network Productions*, 902 F.2d 829, 852 (11th Cir. 1990). In determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the

sanction imposed. *Id.* The Court finds that twice the amount of actual damages is reasonable for this case. *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, (S.D.N.Y. 1983) (appropriate amount was double the fair market value of the license rights). Therefore, Antenas Enterprises is liable to GCB for the sum of $7,360.00. Pursuant to the Act, GCB is also entitled to reasonable attorneys' fees. Counsel shall submit its fee petition no later than June 28, 2006.

### 1. **Luis Dominguez is Liable Individually**

GCB argues Luis Dominguez is personally liable for Antenas Enterprises' violation of § 605 of the Act. The term "person" in the Act means an "*individual*, partnership, association, joint stock company, trust, corporation or governmental entity." 47 U.S.C. § 522(15)(emphasis added); *see also Kingvision Pay Per View, Ltd. v. Myths, Inc.*, No. 99 C 7718, 2001 WL 218909, at *2 (N.D. Ill. March 5, 2001)(individuals may be personally liable under the Act).

Antenas Enterprises is a sole proprietorship, owned by Dominguez. A sole proprietor is personally responsible for actions committed by his employees within the scope of their employment. *See Vernon v. Schuster*, 688 N.E.2d 1172, 1176-77(Ill. 1997) ("[S]ole proprietorship has no legal identity separate from that of the individual who owns it."); *Regency Financial Corp. v. Meziere*, No. 90 C 428, 1990 WL 103247, at *3 (N.D. Ill. July 16, 1990); *Plumbers' Pension Fund, Local 130 v. Wright*, No. 86 C 1485, 1987 WL 10577, at

*1 (N.D. Ill. May 1, 1987). Accordingly, Dominguez is personally liable for the damages caused by the violation of § 605 of the Act.

### III. CONCLUSION

For the reasons stated herein, GCB's Motion for Summary Judgment **is granted.** Antenas Enterprises and Luis Dominguez, personally, are liable to GCB in the amount of $7,360.00. GCB is also entitled to reasonable attorneys' fees. Counsel shall submit its fee petition to the Court no later than June 28, 2006.

GCB's Motion to Strike **is denied** as moot.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: May 23, 2006